A. Clifford Edwards
A. Christopher Edwards
Jackie S. Shields
John W. Edwards
**EDWARDS & CULVER**
1648 Poly Drive, Suite 206
Billings, MT 59102
Tel:  (406) 256-8155
carol.flanagan@edwardslawfirm.org
chris@edwardslawfirm.org
jackie@edwardslawfirm.org
john.edwards@edwardslawfirm.org

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| JENNIFER BECKWITH,<br><br>               Plaintiff,<br><br>vs.<br><br>VOYA FINANCIAL ADVISORS, INC., d/b/a RELIASTAR LIFE INSURANCE COMPANY; and DOES 1-10,<br><br>               Defendants. | Case No.<br><br><br>**COMPLAINT** |

COMES NOW Plaintiff, Jennifer Beckwith, by and through her attorneys of record, Edwards & Culver, and for her Complaint against the Defendants, VOYA

Financial Advisors, Inc., d/b/a ReliaStar Life Insurance Company; and Does 1-10, complains and alleges as follows:

## I.   NATURE OF ACTION, JURISDICTION AND VENUE

1.   This action is brought pursuant to the Employment Retirement Security Act (hereinafter "ERISA") 29 U.S.C. §§1001, *et. seq*., for the purposes of recovering benefits due to Plaintiff under the terms of an ERISA Plan, to clarify Plaintiff's rights to future benefits under the terms of the Plan, for appropriate relief to redress breaches of fiduciary obligations by Defendants, and for recovery of damages, costs and attorney fees incurred based upon Defendants' failure to pay benefits due and owing Plaintiff.

2.   Jurisdiction is vested in this Court because of the presence of a federal question, 28 U.S.C. § 1331, and the jurisdiction conferred by ERISA at 29 U.S.C. §1132(e) and 29 U.S.C. § 2201(a).

3.   Venue is proper in this judicial district and division by virtue of ERISA, 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b), and because the acts complained of occurred in this district and division.

4.   Plaintiff Jennifer Beckwith ("Plaintiff") is, and during the events giving rise to this action was, a resident of the State of Montana.  Plaintiff is, and was at all times relevant, a "participant," as that term is defined by ERISA, in an employee welfare benefit plan insured and administered by Defendants.

5.     Defendant VOYA Financial Advisors, Inc., d/b/a ReliaStar Life Insurance Company (hereinafter "ReliaStar" or "ReliaStar/Voya") is, upon information and belief, a corporation incorporated under the laws of Minnesota with its headquarters located in Minnesota and Des Moines, Iowa.  ReliaStar Life Insurance Company is a wholly owned subsidiary and/or fictitious business name of Voya Financial Advisors, Inc.  Upon information and belief, at all relevant times herein, Voya Financial Advisors, Inc., d/b/a ReliaStar Life Insurance Company was duly licensed as a foreign corporation and is a disability insurance carrier in the State of Montana, engaged in the business of issuing policies of insurance to the public and subject to the laws and regulations of the State of Montana, especially those laws and regulations affecting the conduct of first party disability insurers and first party disability insurance claims and the regulations promulgated thereunder.   Defendants provide insurance and administrative services within this District.

6.     Defendants issued the subject ERISA plan in this state and were the insurers, administrators and fiduciaries of the subject ERISA plan at all relevant times, including at the time Plaintiff's claims arose.

7.     Plaintiff's subject claim for benefits arose in this District, and all or part of the wrongful conduct and/or transactions described herein occurred within

the state of Montana, where ReliaStar/Voya is regularly engaged in commerce and conducts business, including issuing employee welfare benefit insurance plans.

## II.  **THE PARTIES**

8.      Plaintiff Jennifer Beckwith is an individual residing in Yellowstone County, Montana, and she is a citizen of the State of Montana.  At all times relevant herein, Plaintiff was an employee or disabled former employee of Billings Clinic, who had been working as a family medicine physician, and was insured under a "Group Monthly Disability Income Insurance Plan" (hereinafter the "Plan") as part of her employee benefits at Billings Clinic.  The Plan is believed to be an Employee Welfare Benefit Plan established pursuant to ERISA, 29 U.S.C. §1002(1), designed to provide, *inter alia*, disability insurance coverage to the eligible employees of the Billings Clinic, including Plaintiff.  Billings Clinic is named in the Plan as the Policyholder.

9.      At all times relevant herein, Plaintiff was a "participant" of the Plan, as that term is defined by ERISA in 29 U.S.C. § 1002(7).

10.      Upon information and belief, Defendant ReliaStar/Voya is and at all times relevant was the insurer, ERISA plan fiduciary, and plan and claims administrator of the Plan, as those terms are defined by ERISA.

## III.   **MATERIAL ALLEGATIONS OF FACT**

11.   Plaintiff was employed as a family medicine physician by Billings Clinic on January 26, 2015.  As part of their employee benefits, the Billings Clinic provided its employees, including Plaintiff, with a "Group Monthly Disability Income Insurance Plan," the terms of which are believed to be set forth in contract 0064437-4, which provided its participants with coverage under a group disability insurance policy purchased from, and issued, underwritten and/or administered by ReliaStar Life Insurance Company (the "Plan").  Plaintiff was enrolled as a participant in the Plan, and Defendants and/or Billings Clinic distributed Plan documents titled "Your Group Monthly Disability Income Insurance Plan For Employees of Billings Clinic" and "Certificate Booklet Rider" to Plaintiff (collectively "Certificate").  A true and correct copy of the Certificate is attached hereto and incorporated herein as Exhibit 1 (hereinafter "Certificate").

12.   The Certificate specifically states:

> The certificate summarizes and explains the parts of the Group Policy which apply to you.  This certificate is not an insurance policy.  In any case of differences or errors, the Group Policy rules.

Beginning on January 15, 2019, Plaintiff repeatedly asked the Billings Clinic and ReliaStar/Voya to provide her with a copy of the actual policy of insurance and any summary plan description, but was only provided a copy of the Certificate. The complete terms of the Plan are unknown, as Defendants fail and refuse to

provide a copy of the insurance policy to Plaintiff and have only provided the "Certificate" that it expressly states is not an insurance policy.  Neither the Billings Clinic nor ReliaStar/Voya will provide a copy of the subject insurance policy or Summary Plan Description despite Plaintiff's repeated requests.

13.    Upon information and belief, the Certificate and underlying policy was drafted by ReliaStar/Voya (and/or its predecessor in interest d/b/a ReliaStar Life Insurance Company), and Billings Clinic had no involvement in the drafting of the form documents or any ability to negotiate the terms.   It is believed ReliaStar/Voya was not properly delegated discretion under the Plan.

14.    Because Plaintiff was a physician, the "Certificate Booklet Rider," which added a Cost of Living Benefit and an own occupation rider, applied to her and defined disability as:

> ReliaStar Life's determination that a change in your functional capacity to work due to sickness or accidental injury has caused your inability to perform the essential duties of your regular occupation and as a result you are unable to earn more than 80% of your indexed basic monthly earnings.

> Economic factors such as, but not limited to, recession, job obsolescence, paycuts, and job sharing will not be considered in determining whether you meet the requirements stated above.

> You will not be considered disabled solely because of the loss or restriction of your license to engage in your regular occupation.

Exhibit 1, at "Certificate Booklet Rider."

15.     In October 2016, Plaintiff suffered a hypoxic brain injury and was compelled because of medical reasons to suspend her employment as a family medicine physician at Billings Clinic.

16.     As a result of her medical condition, including changes in her functional capacity, after satisfying all prerequisites delineated in the Plan, Plaintiff qualified for and began receiving disability benefits under the terms of the Plan on January 2, 2017.  At all times relevant herein, and particularly when she became disabled, Plaintiff was a participant in the Plan and her premiums were current.

17.     From October 2016 to the present, Plaintiff has received regular treatment from Dr. Terrence Cahill, her physiatrist and rehabilitation physician and/or Dr. Heidi Duncan, her primary care physician.   Plaintiff also had a neuropsychological evaluation completed by Dr. Debra Sheppard on March 29, 2017.  Dr. Sheppard confirmed Plaintiff's cognitive deficits and Dr. Cahill opined that Plaintiff was and is unable to continue to practice medicine.   Plaintiff attempted to work at the Billings Clinic Breast Clinic during this period as well, but was advised by the physicians and administrators operating the clinic that she could not be licensed, so she could not work at the clinic.

18.     Dr. Cahill's statements and beliefs, Dr. Sheppard's findings, the statements made by other medical professionals at the Billings Clinic, the observations of third parties related to her mental and physical conditions, and

Jennifer Beckwith's own knowledge of her mental and physical conditions prevented and continue to prevent Jennifer Beckwith from practicing medicine or applying for her licensure as a physician in the State of Montana.   Any effort by Jennifer Beckwith to practice medicine would constitute "unprofessional conduct" in violation of Montana law.

19.    Despite Plaintiff's continued disability, ReliaStar/Voya determined it would conduct an "independent" neuropsychological evaluation and hired Dr. James Bryan, who performed the evaluation on September 11, 2018.  Although his results were similar to Dr. Sheppard's neuropsychological evaluation, Dr. Bryan alleged Jennifer Beckwith gave "suboptimal effort" and an "invalid performance" on his neuropsychological evaluation and stated he did not have reliable or valid data to make certain assessments requested by ReliaStar/Voya.

20.    ReliaStar/Voya had its paid neuropsychologist, Dr. Malcolm Spica, review Dr. Bryan's neuropsychological evaluation report on October 13, 2018, and, without ever having examined or spoken to Jennifer Beckwith, he falsely accused Mrs. Beckwith of "malingering" and essentially determined she was not disabled.  Despite finding the results of Dr. Bryan's test to be invalid, Dr. Spica used the test to support his statement that Mrs. Beckwith "demonstrated functional capacities within normal limits in cognitive processes as well as behavioral health coping," and that the "independent neuropsychological examination did not

provide converging or consistent evidence of neurocognitive or behavioral health dysfunction that rises to the level of impairment." Dr. Spica further opined that the neuropsychological evaluation did not provide "reliable or valid evidence that Dr. Beckwith is unable to perform the material and substantial duties or essential function of her profession as listed in that analysis." The analysis to which Dr. Spica referred was a vocational analysis commissioned by ReliaStar/Voya, which allegedly set forth an "own occupation assessment" for Mrs. Beckwith's job as a family practice physician. A plain reading of the vocational analysis and Dr. Bryan's neuropsychological evaluation proves Jennifer Beckwith lacked the skills necessary to perform her job as a family practice physician, even under ReliaStar/Voya's own occupational assessment. Notably, Dr. Spica wholly discounted Dr. Cahill's and Dr. Sheppard's assessments and did not seek or recommend another neuropsychological evaluation, despite the allegation that Dr. Bryan's testing provided unreliable and invalid evidence.

21.    ReliaStar/Voya notified Mrs. Beckwith of its findings and their intent to terminate benefits in a voicemail on November 7, 2018. Mrs. Beckwith timely notified ReliaStar/Voya of her disagreement with its findings, her appeal of their decision and her need to submit additional information from her treating physician.

22.    Mrs. Beckwith subsequently submitted a statement from Dr. Cahill, her treating physician, dated November 23, 2018, which disagreed with Dr. Bryan

and Dr. Spica and stated Jennifer Beckwith did not have the ability to practice as a family medicine physician.   He specifically stated that based upon his "prior evaluation as well as clinic evaluation on November 23, 2018" he continued to feel that "she does not have the abilities to return to her prior job function because of her cognitive deficits, specifically those related to attention, memory, reasoning, and processing speed."  He also noted that he had no objective data that she could "return to her job duties safely."

23.     ReliaStar/Voya subsequently had its paid reviewer, Dr. Spica, review Dr. Cahill's additional information.  In his December 4, 2018 report, Dr. Spica mischaracterizes Dr. Cahill's conclusions and reiterates his own belief that there is no reliable or valid evidence that Jennifer Beckwith was unable to perform the material and substantial duties of her profession, choosing to ignore Dr. Cahill's and others' observations and beliefs to the contrary after their examinations and treatment of Mrs. Beckwith.   Dr. Spica's assessment alleged that Jennifer Beckwith could perform at least as high as her scores on the examination and that based upon those scores she was not disabled.  He made such assessment even though similar scores had previously qualified Jennifer Beckwith for benefits, and even though those scores would certainly disqualify her from practicing as a family practice physician according to their own vocational analysis.  Again, Dr. Spica did not recommend a second "independent" medical evaluation be conducted.

24.     Despite its lack of any valid or reliable evidence establishing a material improvement in Plaintiff's medical condition since its acceptance of her disability claims, in a letter dated December 6, 2018, ReliaStar/Voya informed Plaintiff that her long-term disability benefits would be terminated as of December 6, 2018.  Specifically, the letter stated:

> Ms. Beckwith, the medical and vocational evidence supports that you are able to perform the duties of your own occupation as a Physician on a full time basis.  Therefore, you no longer meet the definition of disability in the policy and your claim is closed effective 12/6/2018.

25.     Jennifer Beckwith timely appealed the termination and denial of disability benefits on December 18, 2019, withdrew the appeal on January 11, 2019 (under the direction of ReliaStar/Voya) to enable her to submit additional documentation of her disability, and resubmitted her appeal on April 30, 2019.  In her appeal, Mrs. Beckwith denied that she was malingering, addressed the issues raised by ReliaStar/Voya, and submitted signed statements from herself, her husband Jason Beckwith, and several individuals who were personally familiar with Jennifer Beckwith's abilities before and after her disability and relayed their observations of her mental and physical disabilities in day to day activities.  Mrs. Beckwith also provided information about Montana licensing for physicians.

26.     ReliaStar/Voya acknowledged Mrs. Beckwith's appeal in a letter dated May 20, 2019.  On June 12, 2019, ReliaStar/Voya requested licensing information, which was provided by Mrs. Beckwith on June 14, 2019 and further

clarified by her on June 27, 2019.   No other information was requested within the time the appeal should have been determined.

27.    Instead of conducting a proper review of the basis for their original decision to terminate Mrs. Beckwith's benefits or timely determine her appeal, ReliaStar/Voya improperly and illegally delayed their determination and required Mrs. Beckwith to undergo another neuropsychological evaluation to set her up for denial once again.   In a letter dated August 7, 2019, ReliaStar/Voya demanded another neuropsychological evaluation to be conducted by their paid "independent" medical examiner and improperly led Jennifer Beckwith to believe she had no choice but to submit to the additional neuropsychological evaluation, citing the "Termination of Benefits" term of their policy.   Jennifer Beckwith consistently objected to ReliaStar/Voya's untimely decision of her appeal.

28.    On August 15, 2019, ReliaStar/Voya indicated it would pay back benefits from December 6, 2018 under a "reservation of rights" pending their continued investigation of Mrs. Beckwith's appeal.   ReliaStar/Voya made Mrs. Beckwith's payments dependent upon her submitting to the additional neuropsychological evaluation.   The payment of back benefits was not received until October 7, 2019, *after* Mrs. Beckwith submitted to testing and had already gone many months without the benefits to which she was entitled.   Mrs. Beckwith

continued to protest the untimely determination of her claim to ReliaStar/Voya and expressed her belief it had sufficient information to determine her claim.

29.     Rather than risk being denied back benefits or risk having her appeal summarily denied for refusing to undergo an examination or testing by a doctor of ReliaStar's choosing, as implied in their letter quoting the termination provision of the Plan, Mrs. Beckwith subjected herself to ReliaStar's second neuropsychological examination.  This second neuropsychological examination occurred *after* their denial of benefits, *after* they upheld that denial on review, and *after* the time for the decision of Mrs. Beckwith's appeal had run.  This improper and untimely reassessment was conducted by neuropsychologist, Dr. Michael Villaneuva and reviewed by psychologist, Dr. Timothy McManus, both of whom were chosen and paid by ReliaStar/Voya Financial to conduct such work.

30.     Jennifer Beckwith's treating physician, Dr. Cahill, was asked by ReliaStar/Voya to review their second neuropsychological examination and review.  Contrary to ReliaStar/Voya's allegation, Dr. Cahill was not in agreement with the results and conclusions of Dr. Villaneuva and did not agree that Jennifer Beckwith could perform her job or that she was not disabled.  Dr. Cahill had what he characterized as "clarifications" that expressed distinct disagreements.  He specifically disagreed with the statement that there was "significant decline" between Dr. Sheppard's and Dr. Bryan's neuropsychological evaluations, and he

reiterated his conclusion that he was not confident that Jennifer Beckwith had the ability to perform the job duties required of a practicing family medicine physician.

31.     Notwithstanding Dr. Cahill's continued assessment that Jennifer Beckwith cannot safely perform her job as a family medicine physician and the statements of third parties that corroborate the fact that Mrs. Beckwith has mental and physical disabilities that prevent her from safely practicing medicine, and notwithstanding Montana law that prevents Mrs. Beckwith from practicing medicine under such circumstances, in a letter dated October 21, 2019, ReliaStar/Voya upheld its decision to terminate Jennifer Beckwith's benefits and its subsequent denial on appeal. ReliaStar/Voya cited its second neuropsychological evaluation and review, along with its mischaracterization of Dr. Cahill's opinion, as the basis for its continued denial of benefits. ReliaStar did not provide Mrs. Beckwith the opportunity to provide her own medical information to counter this new information.

32.     Plaintiff received follow-up care from her treating physician, Dr. Cahill, as well as her treating physician, Dr. Duncan. Both Dr. Cahill and Dr. Duncan confirmed their belief that Jennifer Beckwith continues to be unable to perform the job duties required of a practicing family medicine physician. Exhibit 2. In his examination notes dated November 25, 2019, which were submitted to ReliaStar/Voya, Dr. Cahill states that Mrs. Beckwith is experiencing significant

cognitive deficits including "difficulty with memory, attention, reasoning, processing speed," that Mrs. Beckwith has "consistently demonstrated difficulty with attention, concentration, and memory since the time of her injury," and that "[b]ased on her deficits and evaluations, I do not feel Dr. Beckworth [sic] has the ability to return to practicing medicine."  Exhibit 2.  Likewise, Dr. Duncan's statement, which was provided to Voya, noted her current assessment of Dr. Beckwith and her review of all prior neuropsychological exams, as well as her disagreement with any determination that Dr. Beckwith can return to practicing medicine safely.  Exhibit 2.  Voya made no effort, whatsoever, to obtain Dr. Duncan's opinion after using its new neuropsychological evaluation as a basis for denying benefits.  These records were provided to ReliaStar/Voya as evidence of Mrs. Beckwith's continuing disability and as evidence of ReliaStar/Voya's mistake, misinterpretation and/or misrepresentation of Dr. Cahill's opinion subsequent to their new neuropsychological exam.  However, ReliaStar/Voya failed and refused to consider this medical information for any purpose and refused to place the information in Mrs. Beckwith's file.   Exhibit 2.

33.    From her initial date of disability in October of 2016 to the present, Jennifer Beckwith's continued disability and change in her "functional capacity to work" has prevented her from performing her job as a family medicine physician.

At all relevant times herein, Jennifer Beckwith met the eligibility requirements for disability insurance benefits.

34.    At all relevant times, the Certificate set forth the requirements for a participant to receive disability benefits under the Plan, as follows:

> **Qualifying for Benefits**:  ReliaStar Life pays benefits if you become disabled and qualify to receive benefits.  The benefit payable is based on the schedule of Benefits in effect on the date you became disabled.
>
> To qualify for benefits, all of the following conditions must be met: You must-
> - Be insured on the date you become disabled and the condition causing your disability is not excluded from coverage.
> - Be insured on the date the benefit waiting period begins.
> - Send written notice of the disability as described in the claim Procedures Section.
> - Be receiving regular and appropriate care and treatment.
>
> (Ex. 1, p. 9.)

35.    Plaintiff became disabled, as that term is defined by her Plan and the Certificate, and qualified for benefits beginning in October 2016.

36.    At all relevant times herein, the Certificate set forth the circumstances in which benefits could be terminated under the Plan, as follows:

> Termination of Benefits
> ReliaStar Life stops paying benefits on the earliest of the following:
> - The date you are no longer disabled.
> - The end of the maximum benefit period for any one period of disability.  The maximum benefit period is shown on the Schedule of Benefits.
> - The date you no longer qualify for benefits under all the conditions listed.

- The date of your death.
- The date you fail to provide written proof of disability that ReliaStar Life determines to be satisfactory.
- The date you cease to be under regular and appropriate care of a doctor, or refuse to undergo an examination or testing by a doctor of ReliaStar Life's choosing.
- The date you refuse to undergo vocational or rehabilitation testing that ReliaStar Life requires.
- The date you refuse to receive medical treatment that is generally acknowledged by doctors to cure or improve your condition so as to reduce its disabling effect.
- The date you refuse to work with the assistance of modifications made to your work environment, functional job elements or work schedule, or adaptive equipment or devices, that a qualified doctor has indicated will accommodate the limiting factors of your sickness or accidental injury.
- The date you elect to receive retirement benefits under the Policyholder's retirement plan.

If the Group Policy or the Disability Income Insurance part of the Group Policy terminates after you qualify to receive benefits, ReliaStar Life continues your benefit payments. Benefits are paid as long as you continue to qualify according to the terms of the Group Policy in effect on the date you qualified.
(Ex. 1, pgs. 12-13.)

37. At all times relevant herein, none of the conditions necessary for termination of Plaintiff's disability benefits existed. Although Defendants terminated benefits because Plaintiff allegedly no longer met the definition of disabled, ReliaStar/Voya had ample evidence of her disability at the time she initially qualified for benefits, at the time of its termination of benefits, and at the time it reviewed and upheld its decision to terminate benefits. From October 2016 to the present, "a change in [Plaintiff's] functional capacity to work due to sickness

or accidental injury has caused [her] inability to perform the essential duties of [her] regular occupation and as a result [she is] unable to earn more than 80% of [her] indexed basic monthly earnings."  See Exhibit 1 at "Certificate Booklet Rider."  Reliastar/Voya's initial determination that Plaintiff is disabled was correct, and she continues to meet the definition of disabled.

38.   None of the physicians or evaluations commissioned by ReliaStar disputed that there was a "change in [her] functional capacity to work."  As a result of that change, Dr. Cahill found Mrs. Beckwith could not safely practice medicine, and has never released Mrs. Beckwith to work or changed his opinion since making that determination.  No physician that is responsible or accountable under the laws of the State of Montana has told Mrs. Beckwith she is able to practice her profession with reasonable skill and safety.   None of ReliaStar/Voya's neuropsychologists have stated that Mrs. Beckwith is lawfully able to practice medicine even if her treating physician has not released her to work and has stated he believes she cannot safely practice medicine or if others have indicated that she does not exhibit the skills necessary for the safe practice of medicine.

39.   Jennifer Beckwith has provided information and documentation to ReliaStar/Voya that supports the fact that she continues to be disabled, as that term is defined in the Certificate, and is entitled to benefits under the Plan, yet

ReliaStar/Voya fails and refuses to provide Jennifer Beckwith with the benefits to which she is entitled.

40.    Defendants wrongfully terminated Plaintiff's benefits without valid basis in contravention of the terms of the Plan and Plaintiff's rights under ERISA.

41.    Defendants did not conduct a full and fair review of Plaintiff's claim for benefits, and did not conduct its review of its decision to terminate benefits and its appeal process in accordance with the Plan or the applicable law or in good faith.  ReliaStar/Voya conducted additional medical evaluations and created new information as part of its review on appeal, without providing Plaintiff with a reasonable opportunity to respond or provide additional information, and made an untimely decision upholding its termination of benefits.

42.    Defendants knew Plaintiff's true medical condition and disability and her treating physician's findings about her ability to practice as a family medicine physician, and knew or should have known Plaintiff could not lawfully practice medicine under the laws of the State of Montana under the circumstances. Defendants knowingly or recklessly disregarded the information supporting the fact that Plaintiff was disabled, as well as the laws of the state of Montana concerning medical licensing and professional conduct, which prevent Plaintiff from practicing medicine and obtaining a license when diagnosed with a physical or mental disability that renders her unable to practice her profession with

reasonable skill and safety.   ReliaStar/Voya knew the reasons stated for its termination of Plaintiff's benefits were pretexts.

43.     Defendants' acts as alleged herein were done with malice and in bad faith.

44.     As a result of the foregoing actions, Defendants have breached their obligations and duties under the Plan and ERISA, resulting in Plaintiff's loss of benefits and additional damages, including, but not limited to financial hardship, lost interest and attorney fees and costs incurred to bring this action.

45.     Plaintiff has met all conditions precedent to bringing this action, and, in particular, exhausted all administrative duties and remedies.

**<u>COUNT I</u>**
**VIOLATIONS OF ERISA AND CLAIM FOR BENEFITS**

46.     Plaintiff incorporates herein by reference each and every paragraph set forth above in this Complaint, as if set forth in its entirety.

47.     Plaintiff has a claim against Defendants for violation of ERISA under 29 U.S.C. § 1132(a).

48.     Defendants had the duty to comply with the terms of its Plan, the laws and regulations of ERISA, and all applicable Federal and State law.

49.     Defendants' determination that Plaintiff did not meet the definition of disabled under the Plan and its decision to terminate Plaintiff's benefits after she

had already qualified for benefits was incorrect, unreasonable, and not based on a deliberate, principled reasoning process.

50.     Defendants' denial of benefits should be reviewed *de novo*.  However, even if reviewed at a higher standard, Defendants' decision to terminate benefits was also arbitrary and capricious.

51.     Defendants' denial of proper benefit payments was a violation of the Plan's coverage provisions and the protections afforded under ERISA and the applicable law.

52.     In addition to Defendants' improper denial of policy benefits, Defendants failed to fairly and properly investigate Plaintiff's claim, failed to follow reasonable claims procedures or conduct a full and fair review of Plaintiff's claim for benefits, failed to provide Plaintiff with Plan documents upon request, and otherwise violated ERISA laws and regulations, and Federal and Montana law regulating the construction and interpretation of insurance contracts.   See Exhibits 1 and 2.

53.     Upon information and belief, ReliaStar/Voya was not properly delegated discretion to determine eligibility for benefits under the Plan.  Even if such discretion had been properly delegated, ReliaStar/Voya was operating under a serious conflict of interest in exercising that discretion, and the facts and

circumstances of that conflict must be weighed against it, including the following, either collectively or individually:

a.      Defendant was the underwriting insurance company responsible for paying benefits and was also making Plaintiff's eligibility determinations, thus operating under a structural and financial conflict of interest;

b.      During the review of Plaintiff's claim, Defendants paid for the physicians evaluating Plaintiff and provided those physicians with selective information and guided conclusions, made false statements and/or misinterpreted information, failed to properly and adequately investigate the claim, and failed to lend weight to credible evidence from Plaintiff's treating physicians;

c.      Defendants and/or their predecessors in interest are believed to have a nationwide documented history of parsimonious granting of benefits related to ERISA claims; and

d.      All other facts and circumstances revealed through discovery.

54.     Defendants knowingly and recklessly acted under a serious conflict of interest in investigating and administering the Plaintiff's claim for policy benefits and when terminating her policy benefits under the Plan. Defendants' determination of Plaintiff's disability status was biased, and they refused to consider or credit favorable documentation demonstrating the correct and proper determination of Plaintiff's disability, including her medical condition and ability

to perform her job as a family practice physician.   Defendants wrongfully terminated Plaintiff's benefits due to its conflict of interest.

55.    Defendants violated their duty owed to the Plaintiff to fairly construe and interpret the Plan's language with the "exclusive purpose of providing benefits to participants and beneficiaries," as is required of claims administrators, insurers and fiduciaries under ERISA Section 404, 29 U.S.C. § 1104(a)(1)(A).

56.     Defendants orchestrated a policy to unduly hinder the processing of Plaintiff's claim in violation of its obligations, including, but not limited to those set forth in 29 U.S.C. § 1104 and 29 U.S.C. § 1133, and the regulations promulgated by the Department of Labor at 29 C.F.R. § 2560.503-1.

57.    Upon information and belief, Defendants have established and implemented a policy and common scheme of underpaying claims for benefits.  As part of such policy and common scheme, Defendants conspired to impugn Plaintiff's character and otherwise discredit Plaintiff and her treating physicians and otherwise failed to conduct a fair and reasonable claims review or appeal process, to deny Plaintiff benefits to which she was entitled under the Plan.

58.    Defendants violated the terms of the Plan and acted maliciously and in bad faith when failing to properly investigate and pay Plaintiff's claim for benefits, when failing to properly conduct the appeal of Plaintiff's claim for benefits, when

misrepresenting the terms of Plaintiff's insurance policy, and when wrongfully terminating Plaintiff's benefits under the Plan.

59.     As a proximate result of the aforementioned actions of Defendants, Plaintiff has been denied the disability policy benefits to which she is entitled under the Plan, in violation of ERISA.  Plaintiff is entitled to recover all benefits due her under the terms of the Plan, enforce her rights under the terms of the Plan, and to receive a declaration of her entitlement to future benefits under the Plan, pursuant to 29 U.S.C. §1132(a), interest thereon pursuant to 28 U.S.C. §1961, and attorneys' fees and costs pursuant to 29 U.S.C. §1132(g)(1).

## COUNT II
## BREACH OF FIDUCIARY DUTY

60.     Plaintiff incorporates herein by reference each and every paragraph set forth above in this Complaint, as if set forth in its entirety.

61.     ERISA requires every employee benefit plan to provide for one or more named fiduciaries who will have the "authority to control and manage the operation and administration of the plan," pursuant to 29 U.S.C. § 1102.

62.     At all times relevant herein, Defendants were fiduciaries of the Plan, with all of the duties of Plan fiduciaries as set forth in ERISA.

63.     ReliaStar/Voya is a "fiduciary" as that term is defined by ERISA under 29 U.S.C. § 1002(21).  Even though the discretion was not properly delegated, ReliaStar/Voya exercised discretionary authority, control and

responsibility over implementation and administration of the Plan and determined the eligibility of participants for disability benefits and the amount of such benefits.

64.    As fiduciaries, Defendants owed Plaintiff the duty to fairly construe and interpret the Plan's language with the "exclusive purpose of providing benefits to participants and beneficiaries," as is required of claims administrators, insurers and fiduciaries under ERISA Section 404, 29 U.S.C. § 1104(a)(1)(A).

65.    As fiduciaries, Defendants had the duty to provide Plaintiff with a fair and proper administration of her benefit Plan, a full and fair review of her claims for benefits under the Plan, and a reasonable appeal process.

66.    Defendants breached their fiduciary duty by improperly refusing to provide appropriate and timely disability payments to Plaintiff under the Plan, by establishing and implementing a policy and/or common scheme of underpaying claims for disability benefits, and by failing to provide Plaintiff with a full and fair review of her claims for benefits under the Plan or a reasonable appeal process in violation of ERISA, including, but not limited to 29 U.S.C. §§1132 and 1133(2).

67.    Defendants have further breached their fiduciary duty by failing to properly interpret their own Plan language in a manner that would be in the best interests of ERISA Plan participants, like Plaintiff, who satisfy the Plan's underlying eligibility requirements.  Defendants misconstrued the terms of the Plan and mischaracterized medical information to the disadvantage of Plaintiff, and

failed and refused to consider or credit favorable documentation evidencing Plaintiff's disability and inability to perform her job as a family practice physician.

68.     Defendants have further breached their fiduciary duty, because they were operating under a structural and financial conflict of interest with respect to Plaintiff, which impermissibly affected the handling of the underlying claim and Plaintiff's rights under ERISA (29 U.S.C. §§1132(a)(2)(3) and 1133.)

69.     Defendants orchestrated a policy to unduly hinder the processing of claims in violation of its fiduciary obligations, including, but not limited to  those set forth in 29 U.S.C. § 1104 and 29 U.S.C. § 1133, and the regulations promulgated by the Department of Labor at 29 C.F.R. § 2560.503-1.

70. Defendants' actions related to Plaintiff's claim for long term disability, particularly given their conflict of interest as described herein, were contrary to and not taken for the benefit of participants in the Plan, and otherwise breached fiduciary duties owed by Defendants to Plaintiff.

71.     Defendants' actions were done with malice and in bad faith.

72.     As a result of Defendants' breach of fiduciary duties, Plaintiff has suffered harm.  Plaintiff is entitled to relief, including, but not limited to, recovery of her past benefits and a declaration of her entitlement to future benefits under the plan, pursuant to 29 U.S.C. §1132(a), interest thereon pursuant to 28 U.S.C. §1961,

any other applicable equitable relief pursuant to 29 U.S.C. §1132(a)(3) and attorneys' fees and costs.

## <u>COUNT III</u>
## FAILURE TO PROVIDE DOCUMENTS IN VIOLATION OF ERISA

73.    Plaintiff incorporates herein by reference each and every paragraph set forth above in this Complaint, as if set forth in its entirety.

74.    Under 29 USC §1132(c), a court in its discretion may award up to $100 per day for each day Defendants failed to provide requested documents within 30 days.

75.    Plaintiff initially requested a copy of the insurance policy and the summary plan description on  January 15, 2019.

76.    Defendants failed and refused to provide Plaintiff with the documents requested.  Defendants sent only the Certificate, which states it is not a policy of insurance and does not comply with the laws regarding what is required in a summary plan description.

77.    Defendants' failure to provide the documents caused prejudice to Plaintiff.  Plaintiff was not certain of her rights under her policy of insurance or a summary plan description.  Plaintiff's inability to obtain the documents caused her stress and frustration and required her to seek documents through litigation.

78.     Defendants' failure to provide the documents was done in bad faith to prevent Plaintiff from understanding her policy or her rights in relation to her benefit claim.

79.     Plaintiff should be awarded the full penalty for Defendants' failure to provide copies of the plan documents requested, as well as attorney fees and costs for having to obtain such documents through litigation.

**COUNT IV**
**EQUITABLE RELIEF**

80.     Plaintiff incorporates herein by reference each and every paragraph set forth above in this Complaint, as if set forth in its entirety.

81.     Defendants violated their trust/trustee relationship with Plaintiff.

82.     Defendants were supposed to discharge their fiduciary duties solely in the interest of the participants and beneficiaries and with the utmost, undivided loyalty to their interests.

83.     Plaintiff had the right to a full and fair review, proper notices, and timely decisions regarding the denial of her claimed benefits under ERISA, 29 U.S.C. § 1133 and the applicable U.S. Department of Labor regulations (Code of Federal Regulations) and other protections under the law.

84.     Defendants failed to afford Plaintiff a full and fair review of her claim for benefits, and subjected Plaintiff to unfair claims procedures including, but not limited to, the following: Defendants failed to provide Plan documents upon

request; Defendants failed to issue a timely denial letter precisely explaining the relevant coverage provisions and policy language by which it made its claims decisions; Defendants misrepresented provisions of the policy and failed to follow proper claims procedures under ERISA, applicable regulations and the Plan; Defendants conducted additional medical evaluations and considered new information on its review on appeal, without providing Plaintiff with a reasonable opportunity to respond; Defendants operated under an inherent structural and financial conflict of interest by acting as both administrator and insurer of Plaintiff's benefits, tainting its objectivity, which was required to be independent and unbiased; and Defendants refused to consider or credit favorable documentation demonstrating the correct and proper determination of Plaintiff's disability and ability to perform her job as a family practice physician.

85.     Defendants failed to properly and fairly discharge their duties, and otherwise violated the terms of the Plan and the ERISA laws and regulations.

86.     Plaintiff is entitled to equitable relief against Defendants pursuant to 29 U.S.C. § 1132(a)(3).

87.     Due to Defendants' breach of its duties and violations of law, as described above, Plaintiff has been harmed and will continue to be harmed into the future, by the acts and omissions of Defendants.

88.     Plaintiff requests appropriate equitable relief, including, but not limited to enforcement of the terms of the Plan and the payment of past due and current disability benefits to Plaintiff, re-administration of the Plaintiff's claim and the payment of future benefits to which she is entitled, declaratory relief as to her right to benefits, injunctive relief, equitable disgorgement of profits, a constructive trust, attorney fees, costs of litigation and any other appropriate equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jennifer Beckwith requests the following relief:

a.      An award of her wrongfully withheld disability benefits under the Plan, plus prejudgment interest at the rate allowed by law;

b.      Declaratory judgment that she is entitled to future benefits until she reaches retirement age under the Plan or until her own treating physician unequivocally releases her to perform her own occupation as a family medicine physician, or otherwise clarifying her right to future benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

c.      An award of $100 per day from January 15, 2019 until the Plan documents have been provided to Plaintiff, for the failure to provide copies of the insurance policy and a summary plan description in violation of 29 USC § 1132(c);

d.     An award of her costs of litigation and attorneys' fees incurred in bringing this action pursuant to 29 U.S.C. § 1132(g)(1) or any other applicable law; and,

e.     Such other legal and equitable relief that the Court deems just and proper.

DATED this 27th day of February, 2020.

EDWARDS & CULVER

By:   /s/ A. Christopher Edwards
       A. Clifford Edwards
       A. Christopher Edwards
       Jackie S. Shields
       John W. Edwards
       Attorneys for Plaintiff